## JAFFREY *vs.* CORNISH.

In order that a pauper may gain a settlement in the eighth mode prescribed by the act of the 16th of December, 1828, which requires that he " shall pay all taxes legally assessed," it must be shown that the tax was actually paid.

A negotiable promissory note is not a discharge of a preëxisting debt, unless there be an express agreement to receive it in payment thereof.

And where a person gave a negotiable promissory note to a town, for the amount of a tax assessed against him, it was *held* that the note was not a payment of the tax, within the meaning of the statute, so as to give him a settlement in that town.

Nor would it be a payment of the tax, even if it had been expressly agreed to be received in payment.

ASSUMPSIT, to recover the sum of $67·00, expended by the town of Jaffrey, for the support of Julia P. Newell and her children, from the second day of November, 1838, to the twenty-ninth day of January, 1839.

It was admitted that the pauper and her children were chargeable to the town of Cornish, unless her husband, Jacob Newell, had acquired a settlement in the town of Jaffrey by residence and payment of taxes for the term of seven years in succession, in the eighth mode provided by the act of the 16th of December, 1828.

Newell resided in Jaffrey from the year 1822, until the year 1834, being taxed for his poll and estate during the whole of that period. The taxes against him for the year 1828 amounted to the sum of $3·24. On the first day of January, 1831, the taxes for the year 1828 not having been paid, he gave his negotiable promissory note for the amount of the taxes, payable to the town of Jaffrey, and thereupon the collector of taxes, by direction of the selectmen, crossed his name upon the list in his possession, in the manner in which the names of those persons were crossed who had paid their taxes to the collector.

It was proved, that in the year 1835, upon an examination of the papers of the town of Jaffrey, this note, with some

other papers belonging to the town, was destroyed by the selectmen, as worthless.

There was also some evidence tending to show that at some period prior to 1835 the amount of the note was paid to the town, by Newell.

The court instructed the jury, that the giving of the note, and the crossing out of the name of Newell by the collector, were not payment of the tax ; and directed them to find for the plaintiff, unless they believed that the note was afterwards actually paid.

The jury returned a verdict for the plaintiff, which the defendant moved to set aside on account of the instructions of the court as aforesaid.

*Handerson,* for the defendant. The giving of this note, under the circumstances, was payment of the tax. It has always been held in Massachusetts, that giving a negotiable note for an existing debt, is payment of that debt, whether it is so agreed at the time of giving the note, or not. *Whitcomb & al.* vs. *Williams & als.,* 4 *Pick. R.* 231 ; *Thacher* vs. *Dinsmore,* 5 *Mass. R.* 302 ; *Goodnow* vs. *Tyler,* 7 *Mass.* 41 ; *Maneely* vs. *McGee & als.,* 6 *Mass. R.* 143 ; *Fowler* vs. *Bush,* 21 *Pick. R.* 230.

The cases in the English books, and in New-York, do not go quite so far. The doctrine there is, that a negotiable note, *if received as payment,* is to be held as payment of the previous debt, whether the note be ever paid or not. And the acceptance of a negotiable note on account of a prior debt is *prima facie* evidence of satisfaction. 3 *Starkie on Ev.* 1089, *note, and cases there cited ; Wetherby* vs. *Mann,* 11 *Johns.* 518 ; *Toby* vs. *Barber,* 5 *Johns.* 72 ; *Johnson* vs. *Weed,* 9 *Johns.* 310 ; *Drake* vs. *Mitchell,* 3 *East* 251.

But it is immaterial whether the law be, as held in Massachusetts, or as in the cases last cited, so far as regards this case. It is clear that the note was not received as collateral security for the tax. The tax was cancelled by an erasure, or

Jaffrey *v.* Cornish.

crossing upon the tax list, and the note was taken in lieu of it. There was no *abatement* of the tax. And it cannot be doubted that an arrest of Newell, by the collector, upon his warrant, after the note was given, would have been illegal.

*Edwards,* on the same side.

*Wilson,* for the plaintiff.

GILCHRIST, J.* The only question in this case is, whether the tax of $3·24, assessed to Newell in the town of Jaffrey, in the year 1828, has been paid. It is provided, in the eighth clause of the first section of the act of the 16th of Dec., 1828, entitled "an act relating to the settlement of paupers," (*N. H. Laws* 300, ed. of 1829,) that "any person, of the age of twenty-one years, who shall hereafter reside in any town in this state, and, being taxed for his poll for the term of seven years in succession, shall pay all taxes legally assessed on his poll and estate during the said term, shall be an inhabitant of said town." And the court having instructed the jury that the note was not to be considered as payment of the tax for the year 1828, the question arises, whether the instruction of the court was correct.

It has been held for many years, in Massachusetts, to be a presumption of law, that a negotiable promissory note, given for the amount of a debt due, operates as payment thereof, unless the contrary appears from the facts of the case. In the earliest reported case on this subject, *Thacher* vs. *Dinsmore,* 5 *Mass.* 299, Parsons, C. J., says : "It has long been settled as law in this state, that a negotiable note, given in consideration of a simple contract debt due, is a discharge of the simple contract." This doctrine is recognized in the cases referred to by the counsel for the defendant, and also in *Chapman* vs. *Durrant,* 10 *Mass. R.* 51 ; *Johnson* vs. *Johnson,* 11

* PARKER, C. J., did not sit.

*Ditto* 361; and *Wood* vs. *Bodwell & als.*, 12 *Pick.* 268. But the same judge says, in the case of *Maneely* vs. *McGee*, 6 *Mass. R.* 143, " at common law, a promissory note given by a debtor, to pay to his creditor a subsisting debt, is no discharge of the debt."

These cases derive their authority, therefore, only from the practice in Massachusetts, and the doctrine contained in them is not there assumed to be recognized at common law.

A similar rule has been established in Maine, *Wise* vs. *Hilton*, 4 *Greenl.* 435; *Homes* vs. *Smyth*, 4 *Shepley* 177; and in the former of these cases Mr. Justice Weston considers this rule as an exception to the common law doctrine, that one simple contract is not discharged by another.

But it has been uniformly held, in England, that a bill of exchange, or promissory note, is of itself no discharge of a pre-existing debt. In the case of *Clark* vs. *Mundal*, 1 *Salk.* 124, it is said that " a bill shall never go in discharge of a precedent debt, except it be part of the contract that it should be so." And in *Ward* vs. *Evans*, 1 *Ld. Raym.* 928, Holt, C. J., says : " paper is no payment where there is a precedent debt ; for where such a note is given in payment, it is always intended to be taken under this condition—to be payment, if the money be paid thereon in convenient time." And the creditor receiving the bill was not bound to present it for payment, or give notice of its dishonor. But by the *Stat.* 3 & 4 *Anne, ch.* 9, § 7, the acceptance of such a bill in satisfaction of a debt shall be deemed payment to the creditor, if he do not take his due course to obtain payment of it. And upon the principle that the acceptance of a security of equal degree is no extinguishment of a former debt, it was held, in *Roades* vs. *Barnes*, 1 *Burr.* 9, that a promissory note cannot be pleaded in bar to an action on a simple contract, though a bond may, because it extinguishes the debt. In *Kearslake* vs. *Morgan*, 5 *T. R.* 513, it appears to be held, that a special agreement to receive a bill in satisfaction, is necessary in order to make it payment. In *Puckford* vs. *Maxwell*, 6 *T. R.*

52, the defendant having been arrested for debt, gave a draft for part of the amount, and the plaintiff agreed that he should be discharged out of custody. The draft was dishonored, and the defendant was again arrested upon the same affidavit; and it was held, upon a motion to discharge the defendant out of custody, that if the bill which is given in payment do not turn out to be productive, the party receiving it may consider it as a nullity, and act as if no such bill had been given. In *Owenson* vs. *Morse*, 7 *T. R.* 64, it was held that if the seller of goods take notes or bills for them, without agreeing to run the risk of the notes being paid, and the notes turn out to be worth nothing, this will not be considered as payment. And in *Camidge* vs. *Allenby*, 6 *B. & C.* 373, it is said by Holroyd, J., that bills and notes, delivered as satisfaction of a debt, do not in general operate as satisfaction, unless they turn out to be valuable. *Knox* vs. *Whalley*, 2 *Esp.* 159.

Where, however, a negotiable note has been given, the plaintiff cannot recover in an action for the original demand, unless he produces the instrument, or proves it in his possession or control, or shows that it has been destroyed. *Dangerfield* vs. *Wilby*, 4 *Esp.* 159; *Hadwen* vs. *Mendizabel*, 10 *Moore* 477.

The same principles have been recognized in New-York in a long series of decisions. Where a negotiable note has been given for a simple contract debt, the plaintiff may recover on the original contract, if he shows the note to be lost, or produces and cancels it on the trial. *Holmes* vs. *De-Camp*, 1 *Johns.* 34. And it is said, in the case of *Tobey* vs. *Barber*, 5 *Johns.* 72, to be " a rule well settled, and repeatedly recognized in this court, that taking a note, either of the debtor or a third person, for a preëxisting debt, is no payment, unless it be expressly agreed to take the note as payment, and to run the risk of its being paid." *Schemerhorn* vs. *Loines*, 7 *Ditto* 313; *Johnson* vs. *Weed*, 9 *Ditto* 310; *Angel* vs. *Felton*, 8 *Ditto* 149; *Putnam* vs. *Lewis*, 8 *Ditto* 389; *Hughes* vs. *Wheeler*, 8 *Cowen* 77. In the case of *Olcott* vs. *Rathbone*,

5 *Wend.* 490, the cashier of a bank accepted the check of a third person, for part of the amount of a note which had fallen due, and a new note for the balance, and delivered up the old note ; and it was held, on the check being dishonored, that an action might be maintained on the original note against the maker, to recover the amount of the check, and that the bare fact of delivering up the old note was not evidence that the check and new note were received in payment.

The principle recognized at common law has also received the sanction of this court. In *Wright* vs. *The First Crockery Ware Co.*, 1 *N. H. Rep.* 281, it is said, by Mr. Justice Woodbury, that " if the creditor receive the note or bill of his debtor, or of a third person endorsed by his debtor, either for a precedent debt, or a debt arising at the time, it is not presumed to have been received in satisfaction." And the rule in Massachusetts is characterized as " an unnecessary departure from the common law." And in *Elliot* vs. *Sleeper*, 2 *N. H. Rep.* 327, the same judge says : " We have settled, after much deliberation, that the receipt of a note is not payment of a prior debt, unless by express agreement" ; and reference is made to the case of *Wright* vs. *The Crockery Ware Company.*

There is no evidence in the case of any special agreement to receive the note in payment of the tax. The fact that Newell's name was crossed on the collector's list is no stronger evidence that the note was received as payment, than the delivery of the old note, upon receipt of the new one, in the case of *Olcott* vs. *Rathbone*, above referred to. Nor is there any thing in the case which renders it probable even that any agreement was made. The probabilities are all the other way ; for, considering the situation of Newell, the presumption is that nothing less than actual payment would satisfy the selectmen, anticipating, as they reasonably might, the possibility that he might become a burden to the town, by gaining a settlement by payment of taxes. And we are of opinion that we cannot, consistently with the authorities, hold the acceptance of the note to be a payment of the tax.

But even if we hold that, in ordinary cases, the giving a negotiable note for the amount of a debt, was a payment of that debt, it would not follow that it would be a payment of the tax in question, upon a proper construction of this statute, although there might be an agreement to receive it. If the tax is to be paid in money, in order to enable the pauper to gain a settlement, we do not see how any agreement, if such had been made by the selectmen, could have the effect of dispensing with the requisitions of the statute. In the case of *Peru* vs. *Turner*, 1 *Fairfield* 185, the overseers of Peru gave a promissory note to the town of Turner, for the amount of expenses incurred in the support of a pauper; and in the note expressly admitted the pauper to be chargeable to Peru. But it is said by the court, " from the necessity of the case, overseers may, by virtue of their office, make contracts for the support of the poor, and transact a variety of business in relation to their regulation aud employment. In all which transactions, however, they are acting within the scope of their official duty; but they have no authority, by their mere acts or declarations, to change the settlement of a pauper from one town to another, and confess away the rights of their town, and subject it to liabilities and burthens by any of their arrangements. This is no part of their duty. Though the overseers of Peru gave the note to Turner, and therein acknowledged that the pauper was chargeable to Peru, that confession, or that act, did not establish her settlement in Peru."

The act provides, that any person, &c., who, being taxed for his poll, *shall pay all taxes* legally assessed, &c., shall become an inhabitant. Now this cannot be regarded as a merely arbitrary rule, invented solely to settle conflicting questions of legal right, and having regard only to the liabilities of towns, in their relation to each other; for the rights of the pauper, as against the town, are likewise to be considered. If he pays his taxes, and thus contributes to defray the expenses of the town, he thus acquires a claim to be supported

by the town whenever he becomes destitute. It is equitable that the town whose treasury has received the benefit of his taxes should render him this support. But if the treasury has received no benefit, the obligation to render the support does not arise, nor is it equitable that it should. This construction of the statute is incidentally recognized in various cases. The Massachusetts statute of 1793, ch. 34, provides that a settlement may be gained by a residence in a town for ten years together, and payment of all taxes assessed for any five years within that time. In the case of *Wrentham* vs. *Attleborough*, 5 *Mass. R.* 430, Parsons, C. J., says, that " assessors may, through mistake, assess a man without property, and the mistake may be discovered by his not paying taxes by reason of his poverty. In such case the five years assessment without payment shall not gain a settlement for any man, he not having contributed to the burthens of his town." In *Attleborough* vs. *Middleborough*, 10 *Pick.* 378, where a question arose upon the same statute, Shaw, C. J., says, the single question was, " whether the pauper had actually paid the highway tax assessed upon him in 1824, it being very clear that nothing short of an actual payment of the tax would be a compliance with the statute, and give the pauper a settlement." In the case of *Amenia* vs. *Stanford*, 6 *Johns.* 92, it was said by the court, in considering the statute of 1801, which provides that a settlement may be gained by being charged with, and paying taxes for the space of two years, that " *taxes* mean pecuniary contribution, and when the word *paid* is added by way of defining it, the sense becomes more clear and certain." It was accordingly held that the performance of labor on the highways did not constitute a payment of a tax within the meaning of the act.

Nor can a settlement be gained, where the tax is paid for the pauper by the collector, but without his request. The tax must have been actually paid by the pauper, or by another at his request. *Wallkill* vs. *Mamakating*, 14 *Johns.* 87.

These cases authorize the position, that in order to gain a

Jaffrey *v.* Cornish.

settlement, there must be an actual payment of the tax in money, except in cases where personal service is by law received as an equivalent. The rights of all parties are more easily ascertained by the application of this rule, than by substituting any securities or agreements in place of a payment. Convenience, also, requires that the income of the town, which is derived from taxation, should be received in money, in order that its expenses may be readily defrayed. It is, therefore, obviously proper that something more should be required than a mere promise to contribute; something of more value to the town than the promise of an insolvent. If nothing more than a promise were necessary, a verbal promise, being founded on the same consideration, would be a payment, as well as a written promise; and it is evident that the admission of such a principle would involve the rights of all parties in endless perplexity. We are, therefore, of opinion that there should be

*Judgment on the verdict.*