# HILLSBOROUGH,

## JULY TERM, A. D. 1849.]

---

## CLARK *v.* DRAPER.

A vendor of chattels has, until delivery, a lien upon them for the price, if no credit is stipulated.

Giving a promissory note, payable on demand, for the amount of the price, is not a payment so as to divest the lien.

In the sale of oxen, a delivery of brass knobs, which had been worn upon their horns, is not a symbolical or constructive delivery of the oxen, unless specially so agreed.

The action of trover cannot be maintained unless the plaintiff have a present right of possession in the chattels demanded.

TROVER, for a pair of oxen.

It appeared that the plaintiff purchased the oxen of the defendant for sixty dollars, and gave his promissory note for them; that at the time of the bargain the plaintiff wished the defendant to keep the cattle until the following Saturday, the bargain being made on Thursday. It appeared, also, that at the time of the trade the defendant gave to the plaintiff some brass knobs, which it was said the cattle wore on their horns. On the Tuesday after the trade, the plaintiff sent a couple of boys for the oxen, and the defendant being absent, his daughter, by the direction of the defendant before he left, declined to let the boys take the oxen, and sent by them the note which plaintiff had given for the oxen, together with the following message, in writing :—

<hr>

Clark *v.* Draper.

<hr>

" Mr. Clarke—Sir: I had rather you would take your note than to take the oxen; but if you must have the oxen, I must have the money when you take the oxen.

AARON DRAPER."

It appeared that the boys delivered to the plaintiff both the note and the written message; that soon after, the plaintiff went to the defendant and demanded the oxen; that the defendant refused to give them up unless he had his pay for them; that the plaintiff told him he had got his pay; the defendant told him he had not, that he had got no money and no note, and asked the plaintiff where the note was, and he told him it was none of his business; that the defendant told him he had sent the note back and kept the oxen because he understood the note was not good; but if he would give him another note, then he might have the oxen, but he should sue it immediately, attach the oxen, and get his pay. The plaintiff told him he should not give any note, but should prosecute him if he did not give up the oxen, as he had got his pay.

It appeared that the plaintiff did not give the defendant any new note, nor did he return or offer to return to the defendant the old note. The writ was dated October 4, 1847, and it appeared that the demand for the oxen was made upon the defendant by the plaintiff on the 18th of September preceding.

A verdict was taken by consent for the plaintiff, on which judgment was to be entered, or the verdict to be set aside and judgment entered for the defendant, as the opinion of the court shall be upon the whole case.

*Sawyer*, for the defendant, cited 17 C. L. Rep. 205; 4 Pick. 114; 3 N. H. Rep. 79; 5 N. H. Rep. 237; 7 N. H. Rep. 452.

*Pierce*, for the plaintiff.

Clark *v.* Draper.

Woods, J.    This is an action of trover, and the plaintiff, in order to maintain it, must have either a special or general property in the thing demanded, together with the right of immediate possession.    The property may be absolutely his, yet another may have had such a right to the possession of it when the demand was made and the action brought, that the plaintiff could not, against the will of such person, lawfully have taken it into his possession, and cannot, therefore, maintain the present action, founded, as it is, upon the assumption that his right to possess the chattels has been violated by the defendant.

It appears that in the month of September, 1847, the plaintiff bought the oxen of the defendant for sixty dollars, who agreed to keep them till the following Saturday for the plaintiff, at his request.    No money or other thing was paid for the oxen, and no credit was stipulated for.    Now that transaction constituted a sale of the chattels from the defendant to the plaintiff, who thereupon became the owner of them.    A loss or destruction of them, or any damage happening to them afterwards, would have been the loss or detriment of the purchaser and not of the seller, and the claim of the latter for the price would have been in no wise affected by such an occurrence.    1 Inst. 24, 3.

But notwithstanding such change of property or ownership, the vendor had a right to retain the oxen till the price was paid.    This lien of the vendor upon the goods sold for the payment of the purchase money, has been universally recognized at common law, and its principles somewhat extensively discussed in the cases.    It will be sufficient to cite one or two of them.

A hop merchant sold to B. on diverse days in August, various parcels of hops.    Part of them were weighed and an account of the weights, together with samples, delivered to the purchaser.    The usual time of payment with the trade was the second Saturday subsequent to the sale.    B. did not pay for the hops at the usual time, whereupon A. gave notice

Clark *v.* Draper.

that unless they were paid for by a certain day they would be re-sold. The hops were not paid for, and A. re-sold a part, with the consent of B., who afterwards became a bankrupt, and then A. sold the remainder of the hops without the consent of B. or his assignees. Account of the hops so sold was delivered to B., in which he was charged warehouse rent from the 30th of August. The assignees of B. demanded the hops of A., and tendered the charges of warehouse rent, &c., and on the refusal of A. to deliver them, brought trover. It was holden that the assignees could not maintain the action, because the party must have for that purpose, not only a right of property but a right of possession; and that although a vendee of goods acquires a right of property by the contract of sale, yet he does not acquire a right of possession to the goods until he pays or tenders the price. *Bloxham* v. *Sanders*, 4 B. & C. 941; 10 Eng. C. L. Rep. 477.

Nor as between the original vendor and vendee is the lien of the former divested by his giving to the vendee a delivery order for the goods sold, but remaining in the vendor's warehouse rent free, although it appeared that by the usage of trade in Liverpool, where the parties dealt, goods sold while in warehouse are delivered by the vendor's handing to the vendee a delivery order, and that the holder of such order may obtain credit with a purchaser, as having possession of the goods. *Townley* v. *Crump*, 4 Ad. & El. 58.

To the same effect is the case of *Tooke* v. *Hollingworth*, 5 Term Rep. 215.

The doctrine is fully established in this State by the case of *Williams* v. *Moore*, 5 N. H. Rep. 235.

That there was no actual delivery in this case, so as to destroy the lien of the defendant for the price, is clear. And the delivery of a part as and for the whole, or a symbolical or constructive delivery, if sufficient for such an effect, is not made out by the delivery of the brass knobs that had been worn upon the horns of the oxen. They were not delivered with the intention of thereby making a tradition of

the oxen, which is the essence of a symbolical delivery. But the cases plainly show that the lien is preserved upon all and every parcel of the goods sold which actually remain in the hands of the vendor.

Nor can the giving of the note for the price, payable on demand, in any view, be considered as a payment of the price. The doctrine on this head was fully considered and settled in *Jaffrey* v. *Cornish*, 10 N. H. Rep. 505, where it was held that a promissory note given for the amount of a party's taxes, was not a payment of the taxes for the purpose of gaining a settlement. The taking of a note is in no case the payment of a debt, unless there be a special agreement to that effect. The present is a strong and clear case for the application of that doctrine; and distinct proof that the party taking the note intended thereby to part with his lien upon the property, would be required.

The conclusion, therefore, is, that the present action cannot, upon the evidence reported, be maintained; that the verdict must be set aside, and there must be

*Judgment for the defendant.*