## SPRINGFIELD *v.* ENFIELD.

30    71
74    440

For a pauper to gain a settlement under the tenth mode prescribed by section 1, chapter 65, of the Revised Statutes, requiring a taxation of his poll for seven years in succession, and a payment of all taxes legally assessed, it must appear that the tax is assessed against him individually, and that payment is made by him personally, or by some one at his request, in a manner to make it his legal act.

Where a pauper resided in a society of Shakers for seven successive years, and during that time one of the trustees of the society gave in the invoice of the property of the society, and also the number of polls belonging to the society by number and not by name, and the pauper was reckoned among them, and the whole property and polls were taxed to the trustee in his name, who himself paid the taxes—*held*, that the pauper was not so taxed in the town and did not so pay his taxes as to gain a settlement therein under the tenth mode prescribed by section 1, chapter 65, of the Revised Statutes.

ASSUMPSIT, for money expended and supplies furnished by Springfield for the support of William Hopkins, a pauper, alleged to have his settlement in Enfield.

Writ dated November 30, 1853. Plea, the general issue.

It was agreed by the parties that Hopkins was in the town of Springfield, was poor, and in need of relief, and that the relief was furnished by Springfield, and that the town of Enfield was duly notified.

That Caleb M. Dyer is and has been one of the trustees of the society of Shakers (so called) in Enfield, for more than thirty years last past; that Hopkins came to live in said society sometime in the year 1831, being then about nine years of age; that he was born February 6, 1822; that for the last ten years of his residence in that society, he resided in the same family of which Dyer was trustee; that he left said family and society on the 12th day of June, 1850, and has not been a resident of either since; that the manner of taxing said society has been to tax the polls and estate belonging to each family to one of the trustees thereof, the polls belonging to each by number and not by name; that Dyer gave in the invoice of said society, of which he was

trustee, for more than twelve years last past, and that he paid all taxes, thus assessed, with slight abatements; that in making up the number of ratable polls he included all males from the age of 21 to 70, except such as came to their society not having a residence in Enfield; that such had been frequently left out at such periods as would prevent their gaining a residence; that he is not able to state whether said Hopkins was or was not exempt for that cause; that he had no knowledge that Hopkins had a residence in this State; that Hopkins signed the articles of agreement which constituted him a member of said society, December 17, 1844; that he resided in said society from the time he first came there in 1831, till the time he left, June 12, 1850; and that his name is found on the check list of Enfield from 1843 to 1850 inclusive.

If the foregoing facts are not evidence tending to prove a legal settlement gained by Hopkins under the tenth mode of the Rev. Stat. ch. 65. § 1, the plaintiffs are to be nonsuited; otherwise the case is to stand for trial by jury; and at such trial neither party is to be affected by this statement of facts, which is in no way to be used as evidence.

*Everett*, for the plaintiffs.

The question of law raised by this case is, whether the pauper, Hopkins, being twenty-one years of age, and residing in the society of Shakers, in the town of Enfield, and having the tax on his poll (he having no estate) assessed to and paid by Caleb M. Dyer for seven years in succession, thereby gained a settlement in Enfield.

Under the tenth mode prescribed by the Rev. Stat. ch. 65, § 1, any person being twenty-one years of age, residing in any town and being taxed for his poll for seven years in succession, and having paid all taxes legally assessed against his poll and estate for that time, thereby gains a settlement in that town.

It can make no difference whether the tax is assessed to

and paid by the individual himself, or whether, as the case finds, the practice has been in the society of Shakers, being an association of individuals, the taxes of all are assessed to and paid by one member thereof—" *Qui facit per alium, facit per se.*"

If Dyer, in behalf of the society, gave in the invoice both of polls and estate belonging to the same, then were the members of the society taxed; and Dyer paying for all, then were the taxes of all paid, as fully and completely as if each member of the society had paid for himself personally. And taxes being so assessed and paid, against any member of the society, for a period of seven years in succession, gains for that member a settlement in the town of Enfield.

This is evidently the view always entertained by the town of Enfield, and by Dyer himself, for the case finds that in giving in the polls, they frequently omitted certain members from their number for the express purpose of preventing their gaining a residence in the town. If this view be not correct, then no member of the Shaker family can gain a residence in the town of Enfield unless he happens to hold the office of trustee for seven years in succession. This construction would give the town of Enfield power to perpetrate great wrong upon other towns, or upon the county; for any person putting any amount of property into the general funds of the society, is liable at any time to be cast out poor, and to become a burden upon the town where he has a residence, if any he has, or to be supported by the county; and that while his property has gone to enrich the town of Enfield.

Was Hopkins so taxed in Enfield? This, though purely a question of fact for the jury, is, as we contend, made sure by the facts found in the case.

Hopkins resided in Enfield from 1831 to June 12, 1850. He was twenty-one years of age, February 6, 1843, and from that time, while he lived in Enfield, was a member of the same family with Dyer, a period of seven years and up-

wards. Dyer gave in and paid the taxes of said family during that time, and does not know that Hopkins was ever omitted, (he must have known it if he had been,) and Hopkins' name is found upon the check list from 1843 to 1850, inclusive.

These facts, we contend, are conclusive that Hopkins was taxed in Enfield a period of seven successive years, and thereby gained a settlement in that town.

But if not conclusive of the fact, there is no question, as we think, but they are competent to go to the jury as evidence tending to prove a settlement gained in the mode specified in the case.

*Westgate,* for the defendants.

We say, 1st. That the Rev. Stat. ch. 65, § 1, the tenth mode of gaining a settlement is to be construed strictly, and in order to gain a settlement under it, the pauper himself must be actually taxed for his poll seven years in succession, and pay all taxes legally assessed on his poll and estate during that time. *Weare* v. *New Boston,* 3 N. H. Rep. 203; *Burton* v. *Wakefield,* 4 N. H. Rep. 47; *Henniker* v. *Weare,* 9 N. H. Rep. 573; *Lisbon* v. *Bath,* 1 Foster's Rep. 319.

2d. There is no evidence that Hopkins was ever taxed in Enfield, and, of course, none that he ever paid any taxes, or that any were ever paid for him at his request.

3d. One person cannot give in the poll and invoice of another, and be taxed for it, and thereby change the settlement. This would be a fraud upon the town, and defeat the object of the statute.

4th. But if this could be done, the case does not find that it was done. It raises, at least, strong and legal presumption that Dyer did not give in and was not taxed for Hopkins' poll for the term of seven years. In making up the number of ratable polls he included all males from twenty-one to seventy years of age, except those who had

no residence in Enfield. Such were frequently left out at such periods as would prevent their gaining a settlement, and Hopkins was of the class thus left out. That Dyer gave in only the invoice of the society of which he was trustee, and that Hopkins was a member of the society less than six years, having joined it December 17, 1844, and left it June 12, 1850.

5th. The case does not find that all the taxes were paid, but expressly finds that abatements were made.

EASTMAN, J. It has often been remarked that, as between contesting towns, the statutes regulating the settlement of paupers are construed with great strictness. It is said that upon questions of this kind there are no equities between the towns. And there is no doubt that statutes upon this subject have been construed with a strictness not surpassed upon any other question involving civil rights. *Rex* v. *Kingswinniford*, 4 Term Rep. 219; *Rex* v. *Inhabitants of Ober*, 1 East 599; *Rex* v. *Inhabitants of Rushulme*, 10 East 325; *Jefferson* v. *Pequanach*, 1 Green's (N. J.) Rep. 187; *Rex* v. *Ramsgate*, 6 Barn. & Cress. 712; *Amenia* v. *Stamford*, 6 Johns. 92; *Sherburne* v. *Norwich*, 16 Johns. 188.

If Hopkins, the pauper, had a settlement in Enfield, it must have been acquired as prescribed in the tenth mode of section 1 chapter 65 of the Revised Statutes, which is as follows : " Any person of the age of twenty-one years, who shall have resided in any town in this State, and being taxed for his poll for seven years in succession, shall have paid all taxes legally assessed on his poll and estate during said term, shall thereby gain a settlement in such town." This provision is substantially the same as that contained in the act of December 16, 1828, and also in the act of January 1, 1796 ; and upon it several decisions have been made by our court. Thus it has been held that in order to gain a settlement in this mode, it is necessary that the person shall

have been actually taxed for his poll in the town for the period of seven years in succession. *Henniker* v. *Weare*, 9 N. H. Rep. 573; *Burton* v. *Wakefield*, 4 N. H. Rep. 47 ; *Weare* v. *New Boston*, 3 N. H. Rep. 203. And the selectmen have the right to omit to tax him in any year for the express purpose of preventing his gaining a settlement in the town.

Thus, also, it has been held that the tax must be actually *paid;* and that a negotiable promissory note, payable to a town, for the amount of a tax, will not be payment of the tax so as to give the maker a settlement in the town, even if the selectmen agree to receive it in payment of the tax. *Jaffrey* v. *Cornish*, 10 N. H. Rep. 505. And the *whole* tax must be paid; and by the individual himself personally, or by some one at his request, for him, in such a way as to make it a payment by him, and not by any one else. *Lisbon* v. *Bath*, 1 Foster's Rep. 319.

And these decisions in our reports are sustained by many adjudged cases in other jurisdictions. *Rex* v. *St. Sepulchre*, 1 Barn. & Adol. 924; *Wallkill* v. *Mamakating*, 14 Johns. 87 ; *Peru* v. *Turner*, 1 Fairf. 185 ; *Shrewsbury* v. *Salem*, 19 Pick. 389 ; *Robins* v. *Townsend*, 20 Pick. 345; *Wrentham* v. *Attleborough*, 5 Mass. Rep. 430; *Amenia* v. *Stanford*, 6 Johns. 92; *Attleborough* v. *Middleborough*, 10 Pick. 378.

Such being the law, the question is, was Hopkins taxed by Enfield for seven years in succession, and did he pay all taxes legally assessed upon him during that time ?

It is not pretended that any tax was ever assessed against Hopkins individually, or that he himself ever personally paid any tax to the town of Enfield. His name does not appear upon their books as a tax payer; and unless the giving in of the polls and the payment of the taxes by Dyer, can be held to be an assessment of Hopkins and a payment by him, he was never assessed by the town, and never paid any tax there.

Assuming that the name of Hopkins was reckoned by Dyer for seven years, being from 1843 to 1850 inclusive, as

one of the number for whom he was himself taxed, and that he paid the taxes accordingly, still we think that it cannot be said that Hopkins has been taxed by the town, or that he has paid any taxes. Dyer is the only one that has been taxed. He has given in the invoice, and has also had assessed against him a number of polls; but the names that have gone to make up that number have never been entered upon the books of the town, or any taxes assessed against them. Their names may very likely be unknown to the selectmen, and at no time has there been a tax assessed that could be collected of them. They are not upon the invoice books, or the selectmen's books, nor in the warrants delivered to the collectors. They themselves are not taxed.

This may be a very convenient arrangement both for the trustees of the society and for the selectmen of the town, but still it is a mode of taxation unknown to the law; and should the trustees at any time refuse to pay the taxes assessed for the number of polls, it would probably be difficult for the town to find any law by which they could safely enforce collection.

The payment of the taxes is also surrounded with difficulties, even if the assessment was free from them. These individuals, whose polls are numbered, do not pay the taxes. Nor are they paid with their money or at their request. The case finds no such statement. Dyer pays the taxes, and either with his own money or with that belonging to the society. Even could it be said that the payment must be regarded as made by the members of the society, still in this particular case it would not avail anything, since Hopkins was not a member of the society till December, 1844, and consequently not a member for seven years.

It is said, in argument, that if a settlement is not gained in Enfield by the members of this society by the course of taxation and payment as disclosed in the case, then may the town commit great wrongs upon other towns or upon the county. If there is any deficiency in the law, the legis-

lature can interfere. It should be borne in mind, however, that all towns have now both the power and the right, which is often used, to omit taxing the polls of any of their residents, to prevent their gaining a settlement therein. And we think it may be said to the credit of this society, that they are not in the habit of turning off their members to be supported by the public.

We make no comments upon the doubts that might arise upon some of the facts stated in the case, such as the abatement of the taxes sometimes made, the doubt whether Hopkins' name was reckoned by Dyer till after he became a member of the society, and whether his name was left out during any of the years, because we think the case clear upon the broad ground that Hopkins himself was never assessed in Enfield and never paid any taxes there, and that the evidence stated in the case does not tend to show a legal settlement gained in that town.

According to the provisions of the case, the plaintiffs must be nonsuited.