## BARNET *v.* SMITH.

A bank check is substantially the same as an inland bill of exchange; and, in general, is governed by the law applicable to bills of exchange and promissory notes.

A bank check, until cashed, is not payment of a preëxisting debt, without an express agreement to receive it as such.

The presentment and acceptance of a check at a bank will not discharge a debt for which the check is received, without an agreement to that effect. Payment of the check discharges the debt.

The acceptance of a check, order or bill of exchange, may be by parol.

It seems that, on the presentment of a check to the cashier of a bank, his statement that it is "good," will amount in law to an acceptance.

ASSUMPSIT, on a promissory note, dated April 18th, 1850, made by the defendant, for $55, and payable to Asa Hurlbutt, or order, by the first day of November then next, with interest annually, and by Hurlbutt endorsed to the plaintiff. Plea, the general issue.

By the agreement of parties, the action was referred to a referee, who reported that after a full hearing on both sides, he found and reported to the court the following to be the facts in the case :

On the 17th day of April, A. D. 1850, one Dean C. Hurlbutt was arrested by virtue of a warrant issued by a justice of the peace, on the complaint of one Lydia Ann Jones, under the bastardy act; that one Samuel L. Fletcher was agent of the said Jones and her mother, and of the selectmen of Claremont, where said complainant and her family resided, to settle the complaint and discharge said Dean C. Hurlbutt, except that the complainant was a minor and had no guardian; that Asa Hurlbutt, the father of Dean C. Hurlbutt, undertook to settle up the complaint with said Fletcher, and procure the discharge of his son; that Fletcher and Asa Hurlbutt agreed that Dean C. should be discharged by Fletcher from the complaint and warrant, and from all liability growing out of the facts charged therein, and

Barnet *v.* Smith.

that Asa Hurlbutt should pay to Fletcher fifty dollars down, and give him a note for fifty dollars more, payable on certain conditions therein specified.

That for the purpose of raising the former sum of fifty dollars, Asa Hurlbutt procured the defendant, Fielding Smith, to make his note, of which the following is a true copy, to wit:

" $55,00. April 18th, 1850. For value received, I promise to pay Asa Hurlbutt, or order, fifty-five dollars, by the first day of November next, with interest annually.
(Signed) " FIELDING SMITH."

That Asa Hurlbutt endorsed said note to David Burnside, who, by agreement, was to pay Hurlbutt fifty dollars for the note. Said Burnside had funds to a greater amount in Lancaster Bank, and gave Hurlbutt a check in the words and figures following, to wit:

" Lancaster Bank, April 18th, 1850.
" Pay Asa Hurlbutt fifty dollars.
(Signed) " DAVID BURNSIDE.
" To the cashier."

And at the same time took the note, and told Hurlbutt if he could not get the fifty dollars on the check, he would raise the money for him in some other way.

Hurlbutt carried the check immediately to George A. Cossit, who was the cashier of Lancaster Bank, and asked him if it was good for fifty dollars, and Cossit told him it was. The conditional note was then made and signed by Hurlbutt, and a discharge written on the back of said complaint, and signed by Fletcher and Asa Hurlbutt, in the words and figures following, to wit:

Barnet *v.* Smith.

"Lancaster, N. H., April 18th, 1850.

"The within complaint is satisfied and adjusted by the within named parties.

(Signed) "LYDIA A. JONES,
By S. L. Fletcher.
"ASA HURLBUTT."

Asa Hurlbutt then said to Cossit, "You may count out the money. I suppose it is all right, but I want to show the papers to my counsel, Mr. Williams," and took the complaint, with the discharge thereon, and went to the office of Jared W. Williams, Esq., to consult him as to the sufficiency of the discharge. Williams disapproved of the discharge, and wrote underneath it, on the back of the complaint, another discharge, in the words and figures following, to wit:

"And I hereby discharge said Hurlbutt and his father, Asa Hurlbutt, from all liability to the said Lydia Ann Jones, on account of her pregnancy, or to the family and friends, on account of the said Lydia Ann being with child by said D. C. Hurlbutt, for value received, he having paid me in full for all claims for said pregnancy whatever, so far as said Lydia Ann, her family, or the town, are concerned, which may be liable to support said child."

And directed Asa Hurlbutt to procure Fletcher to sign it. Hurlbutt carried said second discharge, and requested Fletcher to sign it, which he refused to do, saying that the discharge he had already signed was sufficient, and that the matter was all settled, and that he had got the conditional note and the money. Hurlbutt then asked Cossit if he had paid the money to Mr. Fletcher, and he said he had, according to Hurlbutt's direction. Hurlbutt told Cossit that he did not direct him to pay the money to Fletcher; he only directed him to count it out. Hurlbutt still had the check of Burnside in his possession, and Cossit refused to pay him the money on it, on the ground that he had paid the money

on it once, and should not pay it again. Hurlbutt went for Williams, who went to the bank office, where Cossit and Fletcher were. Hurlbutt and his counsel insisted ,upon Fletcher's signing said additional discharge, which he at length did. Williams then inquired as to the authority of Fletcher to discharge said complaint, and objected on the ground that the complainant was a minor, and not capable of appointing an attorney, and for other reasons, and re-peated a demand which he had previously made before Fletcher signed said last discharge, in behalf of Hurlbutt, that Fletcher would give up said conditional note and said money, and put all the papers and things back in the same condition in which they were before they commenced any of these proceedings, although neither Hurlbutt nor his counsel offered, in terms, to restore Dean C. Hurlbutt to the custody of the officer, or to have said discharges cancelled; and the complaint and warrant, with said discharges there-on, were allowed, by the assent of the parties, to remain in the officer's hands, and Dean C. Hurlbutt to go at liberty. Cossit, being present during these transactions, did not de-mand the money back from Fletcher, nor interfere in the controversy, except to demand the check of Hurlbutt, and he refused to deliver it up. The stage was then waiting for Fletcher, and he left in it for Charlestown, N. H., the place of his residence. Mr. Hurlbutt soon after, and on the same day, saw Mr. Burnside and informed him that the cashier re-fused to pay over the fifty dollars on said check, and Burnside told him if that was so, to return the check, and he would give him up the note. Mr. Cossit sent word to Mr. Burn-side, the same day, that he had paid over the money on said check, and Mr. Hurlbutt had wrongfully retained it from him, and requested Burnside not to take the check back.

Burnside retained the note, and Hurlbutt the check. About the time the note became due, the first of November, 1850, Hurlbutt told Burnside that he should have his pay on the note very soon; that his son, Dean C., was at work

for the money, for Mr. Jennison, and that Mr. Jennison would be down in a few days and bring the money and pay the note; but a short time after this, Hurlbutt saw Burnside, and informed him that he should not pay the note. Burnside then went to Cossit and told him that he (Burnside) ought not to suffer, as the difficulty did not arise through his fault, and Cossit thereupon paid to Burnside the face of the note and interest thereon, and took it into his own hands, on the 14th of November, 1850, and Cossit procured this suit to be brought, to recover the amount of this note, in the name of this plaintiff, who is but a nominal party.

The referee then proceeded to state that the defence to the action was, that there was either a want or a failure of consideration, and that he found that there was no consideration to support the note, unless the check should be held to be a sufficient consideration, or the other facts set forth by him should be decided to show a consideration.

*H. A. & A. H. Bellows,* for the plaintiff.

The note might be sold the same as any other article of personal property. The note was indorsed, and the property in it passed. The purchase by Burnside was complete, and there are no circumstances disclosed entitling Hurlbutt to recall it. There has been no rescinding of the contract, no demand for a recision, and at most Hurlbutt could not recover back the note until he had demanded, and Burnside had refused to pay. *Lane v. Shackford,* 5 N. H. Rep. 130; *Ayer v. Hawkes,* 11 N. H. Rep. 148; *Spiller v. Westlake,* 2 Barn. & Adolph. 155; Chitty on Bills 77, 78.

No such demand was made, and Burnside was always ready to pay. And, further, Hurlbutt was paid. The money was counted out and delivered to Fletcher, by the directions of Hurlbutt himself, and the note became the absolute property of Burnside.

We say again that the bank had accepted the draft, and

had funds. The check was pronounced "good," and that was an acceptance. *Edson* v. *Fuller*, 2 Foster's Rep. 183; *Franklin* v. *Marsh*, 6 N. H. Rep. 364; Chitty on Bills 289, note y.

Hurlbutt assented to the payment of the money to Fletcher, by his procuring Fletcher to execute a discharge, knowing that he had the money. So he could not require Burnside to take back the draft, without returning it in the same plight. This he did not and could not do. By acts of his, equivocal, to say the least, it was made questionable whether he had not received his pay already. And he could not compel Burnside to contest that matter, without at least furnishing indemnity.

It was his duty to seek his remedy against the bank or Fletcher. Besides, the settlement with Fletcher was complete. The getting him to sign the last discharge, when Fletcher held the money, was a full recognition, especially as he did not restore D. C. Hurlbutt to the custody of the officer, or cancel the discharges.

*Perley*, with whom was *Stevens*, and *J. W. & G. C. Williams*, for the defendant.

We contend: I. The referee finds that there was no consideration for the note, unless the facts found constitute a consideration as matter of law. The note was without consideration, and until negotiated, had no validity. The court will not draw inferences of fact.

The consideration agreed for the note was to be the payment of $50 to Hurlbutt. And Burnside gave his check for $50. The referee does not find that the check was received in payment, and the court will not, for that would be an inference of fact. The check was no payment of the $50, unless it was paid, and Burnside could maintain no action upon the note until he had paid for it. *Kobbi* v. *Underhill*, 2 Sandf. Ch. Rep. 277.

What was this check? We do not understand it to be

property, as contended upon the other side. Neither do we understand that it must be returned. Where a note is given for goods, it need not be returned before suit for the goods, unless taken in payment. A dishonored check is nothing. It is not property until paid. And here is no acceptance found by the referee ; the transaction was at most only evidence. If Burnside had gone afterwards and withdrawn the funds, the bank would not have been liable for the money. And an acceptance would not be payment. Story on Bills, § 419.

The referee finds no payment of the check to Hurlbutt. Nor does he find a payment to Fletcher authorized by Hurlbutt. Nor does he find a ratification of the unauthorized payment. And it cannot be inferred as matter of law. The facts show the contrary, especially Hurlbutt's declarations at the time.

The transactions between Hurlbutt and Fletcher have no bearing on the question of consideration. And they amount to nothing ; for they were mere negotiations and came to nothing. And the discharge was void and could be shown to be so. *Edgerly* v. *Emerson*, 3 Foster's Rep. 555.

On all these points the evidence does not seem to have led the referee to the conclusions necessary to sustain the plaintiff's case. He comes to a contrary conclusion, which must stand, unless on the facts stated the court must pronounce that conclusion illegal.

As the plaintiff of record is but a nominal party, and Cossit, the party in interest, took the note with notice, this defence is open.

II. But if the court go behind the finding of the referee and examine the facts, the plaintiff cannot recover. This note was an accommodation note, and Cossit took it with notice from Burnside, who was not a holder for value. Story on Prom. Notes, § 190.

EASTMAN, J. In the form in which the report of the re-

Barnet *v*. Smith.

feree has been transferred to this court, we must either dis-
miss it from our docket, or treat it as an agreed case. Our
first inclination was to take the former course, the report ap-
pearing to be in some respects indefinite and uncertain, and
not in such a situation as could be wished in order to be
properly passed upon by the court. But as counsel have ar-
gued and submitted it to our consideration, we have en-
deavored to make a decision upon it. In so doing we have
treated the matters stated by the referee as proved facts;
this being the only way in which we could have any basis
upon which to form an opinion. Indeed, the referee reports
that he finds the facts to be as stated by him; and without
deciding the case either for the one party or the other, he
states the facts, leaving the law arising thereon to the court.
And it was in this view, as we understand it, that the case
was sent to this court for determination.

The note had no legal connection with the settlement of
the complaint between Fletcher and Hurlbutt, and therefore
no question arises as to the legality of that settlement, or
the power of Fletcher to discharge the prosecution. It was
agreed between Fletcher and Hurlbutt that the complaint
should be settled, and that all liability on account of the
charge which it contained should be discharged. In consid-
eration of the discharge Hurlbutt was to pay Fletcher fifty
dollars in cash, and give a conditional note for fifty more.

To enable Hurlbutt to raise the fifty dollars, Smith, the
defendant, gave him his note for fifty-five dollars, payable to
Hurlbutt or order, on time, with interest. What the con-
sideration was, if any, that passed between Hurlbutt and
Smith, does not appear; nor does the report disclose any
contract between them. It was, however, a negotiable
promissory note, payable on time, and, in the hands of a
*bona fide* holder, for consideration, would be good as an ac-
commodation note merely. Hurlbutt held the note, and
Smith made no objections to its being passed to Burnside
or to any one else. Nor do we find Smith objecting, at any

time, to anything that was done with the note, or giving notice to any one that it was without consideration. And the report shows that this defence is made more for the benefit of Hurlbutt than of Smith.

The note being in the hands of Hurlbutt, was sold and negotiated to Burnside for a valuable consideration. Burnside was in no way connected with the agreements and transactions between Hurlbutt and Fletcher, and was a *bona fide* purchaser of the note. He contracted to give fifty dollars for it, but instead of paying the money handed to Hurlbutt his check for that amount on the Lancaster Bank, where he had funds, and the check was paid.

If the check had not been paid, we are not prepared to say that the plaintiff could recover. It does not appear that Hurlbutt agreed to take the check in payment for the note; and in the absence of such an agreement, the check would not be payment, unless Hurlbutt by holding it or by his laches, in not presenting it, should become chargeable with treating it as payment. A bank check is substantially the same as an inland bill of exchange; and, in general, is governed by the law applicable to bills of exchange and promissory notes. Until cashed, it is not payment of a pre-existing debt, any more than a promissory note is payment of such a debt, without an agreement to receive it as such. And a negotiable promissory note will not be a discharge of a pre-existing debt unless there be an express agreement to receive it as payment. *Jaffrey* v. *Cornish*, 10 N. H. Rep. 505; *Smith* v. *Jones*, 20 Wend. 192; *Murray* v. *Judah*, 6 Cow. 484; *Glenn* v. *Noble*, 1 Blackf. 104; *Woods* v. *Schrœder*, 4 Harr. & Johns. 276; *People* v. *Hall*, 4 Johns. 296; *People* v. *Baker*, 20 Wend. 602; *Cromwell* v. *Lovett*, 1 Hall 56; *Hoar* v. *Clute*, 15 Johns. 224; *Gallager* v. *Roberts*, 2 Wash. C. C. Rep. 191; *Wright* v. *The First Crockery Ware Co.*, 1 N. H. Rep. 281; *Elliott* v. *Sleeper*, 2 N. H. Rep. 327; *Tobey* v. *Barker*, 5 Johns. 71; *Hughes* v. *Wheeler*, 8 Cow. 77; *Camidge* v. *Allenby*, 6 Barn. & Cres.

of intoxicating 373; *Clark* v. *Mundal,* 1 Salk. 124; 5 Term Rep. 513; 2 Esp. 159; 6 Term Rep. 52; 1 Ld. Raym. 928.

Neither would the presentment and acceptance of the check at the bank amount to payment, nor be a value received for the note. The check being in the hands of Hurlbutt, and payable to him, was presented to the cashier, who pronounced it "good." This was competent evidence of an acceptance, if not indeed an acceptance itself, by the bank, which would bind them to pay the amount. At common law an acceptance of a check or bill of exchange may be by parol. *Clark* v. *Cock,* 4 East 72; *Lumley* v. *Palmer,* 2 Strange 1000; *Julian* v. *Shobrooke,* 2 Wils. 9; *Powell* v. *Mounier,* 1 Atk. 613; *Sproat* v. *Matthews,* 1 Term Rep. 182; *Pillans* v. *Mierop,* 3 Burr. 1662; *Leonard* v. *Mason,* 1 Wend. 522; *Wilson* v. *Clement,* 3 Mass. Rep. 1; *Williams* v. *Winens,* 2 Green 339; *McEvers* v. *Mason,* 10 Johns. 207; *Ontario Bank* v. *Worthington,* 12 Wend. 593; *Bank of Michigan* v. *Ely,* 17 Wend. 508; *Ward* v. *Alden,* 2 Met. 53.

By the act of 1 and 2, Geo. IV. ch. 78, it was provided that from and after the first day of August, 1821, no acceptance of any *inland* bill of exchange shall be sufficient to charge any person, unless such acceptance be in writing on such bill. And a similar provision has been incorporated into the Revised Statutes of New York. We have no statute of the kind in this State, and with us the rule remains as at common law; a valid acceptance of an order, check, or bill of exchange, may be by parol. *Edson* v. *Fuller,* 2 Foster's Rep. 183.

Whether the statement of the cashier, when Hurlbutt presented the check to him, "that it was good," was in law an acceptance of the check, is perhaps matter of some doubt. In general, as no formal act is required to constitute a simple contract, and any mode which demonstrates an intention to become bound by it, will have an obligatory force upon the contracting party, so any act of a drawee or acceptor, which evinces a consent to comply with the re-

quest of the drawer, will constitute an acceptance. Thus where the acceptance is in writing, the words, " accepted," " seen," " presented," written on the bill, or on any other paper relating to the transaction, will amount to an acceptance. Chitty on Bills 174; *Spear* v. *Pratt*, 2 Hill 582.

In *Edson* v. *Fuller*, 2 Foster's Rep. 187, it is said that whether there has been an acceptance or not is a question of law upon the facts found; and *Sproat* v. *Matthews*, 1 Term Rep. 182, is cited as sustaining the position. Mr. Chitty (Chitty on Bills 171) lays down the same general proposition, and cites the same authority. This rule was substantially acted upon in *Edson* v. *Fuller*, where it was held that a promise " to settle " was equivalent to a promise " to pay," and amounted to an acceptance of the order.

In *Clark* v. *Cock*, 4 East 72, *Lawrence*, J., in giving a construction to the language of a letter written by the drawee to the drawer of a bill, says: " The only question then, is, whether a letter in which he assures him that the bills will meet with due honor from him, the drawee, is not an engagement to pay the bills when due; of which there can be no doubt."

And in *Franklin* v. *March*, 6 N. H. Rep. 364, where the action was upon a promissory note of the following tenor: " Good to Robert Cochrane or order, for thirty·dollars, borrowed money," the court say that " Good to R. C. or order, is equivalent to a promise to pay R. C. or order." And the instrument was held to be a promissory note. See, also, *Morris* v. *Lee*, 1 Ld. Ray. 1396.

Upon the doctrine of these authorities, it would seem that the presentment of this check to the cashier of the bank and his statement that it was " good," would amount in law to an acceptance.

But, notwithstanding this transaction might amount to an acceptance, and might in law bind the bank to pay the check, yet the acceptance would not be payment; and unless the money were paid, Hurlbutt would not have received

a consideration for the note, and the note would not have legally passed to Burnside.

But, as we view it, the check was paid. The discharge which had been agreed upon between Fletcher and Hurlbutt, and which was to form the consideration of the conditional note and money, was written and signed in the bank; and simultaneously Hurlbutt told Cossit, the cashier, to count out the money. This he did, and handed it to Fletcher, who had signed the discharge and delivered up the papers to Hurlbutt; and who afterwards signed another discharge more formal, if not more binding. Cossit had no interest in the matter. As cashier of the bank, he would have preferred to have retained the money, and certainly would not have paid it over to Fletcher had he not distinctly understood Hurlbutt so to direct.

The check, then, was paid; paid by Hurlbutt's direction, and Burnside became thereby the *bona fide* owner and holder of the note, for a good and valuable consideration.

The statement of Hurlbutt that when he told Cossit to count out the money he did not direct him to pay it to Fletcher, but only to count it out, appears to us to be a mere after thought, made when he found that the discharge which had been signed was not satisfactory to his counsel, and when he was urging him to sign the new discharge. The signing of the second discharge after this, at Hurlbutt's request, could amount to nothing else than a ratification of the payment of the money to Fletcher, even if there was any ambiguity in the direction given to Cossit.

Hurlbutt's conversation with Burnside in November, about the time the note fell due, when he said it would be paid, shows how he regarded the whole transaction after months had intervened.

The note having become the property of Burnside, for value, he could sell and transfer it to whomsoever he pleased. Cossit took it with notice, and the defence against him or his indorsee, who is a nominal party, would be good, if it

were available against Burnside; but not being available against him, it is not against the plaintiff. He stands in no worse a position than Burnside.

The fact that payment of the note was refused, and that Burnside urged Cossit to take it, could not change the liability of the defendant. Cossit purchased the note as an individual, and paid the full amount due thereon; and we all think that there should be,

*Judgment for the plaintiff.*